OPINION
{¶ 1} Shirley Limberg appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of her employer, McDonald's Corporation, on her claims of age discrimination, intentional infliction of emotional distress, and retaliation.
 {¶ 2} In May 1980, Limberg was hired by McDonald's as a crewperson, performing such duties as making and serving food and working the drive-through position. Throughout her employment, Limberg understood the management hierarchy to be Restaurant Manager, Senior Manager, Profit Center Trainer, Operations Consultant, Operations Manager. In 1986, Limberg was promoted to the position of Restaurant Manager. In September of 1988, McDonald's again promoted her to an Operations Consultant position, a position that she held for two and one-half years. In March of 1991, Limberg returned to a Restaurant Manager position. Limberg states that this demotion was "a relief," because it allowed her to have more time to address the medical needs of her parents and because she did not like being an Operations Consultant.
 {¶ 3} In 1996, McDonald's promoted Limberg to the position of Profit Center Trainer. As a Profit Center Trainer, Limberg's primary duties involved setting up training curricula for manager trainees within restaurants, taking managers through their training books, completing shift evaluations on managers, and doing special projects. In February of 2001, Limberg met with her supervisor, Ken Roosa, an Operations Manager, during which he gave her an "excellent" evaluation for her job performance in 2000. According to Limberg, Roosa also informed Limberg that she would be transferred to the new position of General Manager. In April, 2001, Limberg was transferred to the General Manager position. According to Deborah Mossa, McDonald's Market Manager, a General Manager's duties were to work with under-performing restaurants, to return them to profitability and to train their staffs so the restaurant would be profitable. Limberg was assigned to the Derr Road restaurant in Springfield, Ohio, and was informed that she would have oversight responsibilities of a second restaurant in Urbana, Ohio. Tammy Vamos, who was thirty-two years old, was promoted to the Limberg's former position of Profit Center Trainer.
 {¶ 4} Limberg was displeased that she would no longer be a Profit Center Trainer. According to Limberg, as a General Manager, she was performing the work of a restaurant manager, her work hours were no longer regular, and she worked more hours than she had as a Profit Center Trainer. Although Limberg suffered no loss in pay or benefits when she became a General Manager, she felt that, in effect, she was earning less per hour since more hours were required of her as a General Manager.
 {¶ 5} Soon after becoming a General Manager, Limberg heard that a Human Resource and Development ("HRD") Consultant position in Cincinnati was open. Limberg informed Anita Patton, the Human Resources Manager in Dayton, that she wished to compete for that job. Patton arranged for Limberg to interview with Theresa Tanner, a Senior Consultant in the Cincinnati human resources department, for the open position. Tanner and Limberg met at the Blue Ash restaurant in April, 2001. In May or early June of 2001, after she had interviewed, Limberg received an announcement seeking applications for the same HRD Consultant position. Although Limberg expressed continued interest in competing for the job, she was not interviewed again. Ultimately, McDonald's hired Kimberly Fite, who was thirty-four years old, for the position. Limberg subsequently took short-term disability leave to address the onset of serious depression and anxiety.
 {¶ 6} Consequently, on October 25, 2001, Limberg initiated this litigation, asserting claims of age discrimination and intentional infliction of emotional distress against Ken Roosa, Anita Patton and McDonald's. In particular, Limberg alleged that McDonald's had discriminated against her on the basis of her age on two separate occasions. First, she asserted that her transfer from the position of Profit Center Trainer to that of General Manager was discriminatory. Second, she claimed that McDonald's failure to hire her when she applied for the HRD Consultant position in Cincinnati constituted age discrimination.
 {¶ 7} On April 3, 2002, Limberg returned from her short-term disability leave. She was assigned to work in the Stroop Road restaurant. Although she was General Manager, Limberg was assigned crew work, in which she served food and operated the drive-through, cleaned the lobby and furniture, and changed the filters on the roof. Limberg indicates that she took direction from the Restaurant Manager, had to ask permission to use the restroom or to take a break, no longer had the same security clearance for access to computerized information, and was excluded from management meetings.
 {¶ 8} Between June 1 and August 5, 2002, Limberg took a pre-approved corporate sabbatical. Upon her return, she was assigned to the McDonald's restaurant at the Upper Valley Mall in Springfield, Ohio, where, according to Limberg, she performed the work of a Restaurant Manager.
 {¶ 9} On August 16, 2002, Limberg amended her complaint to add a claim of retaliation. In March of 2003, Limberg dismissed her claims against Roosa and Patton in their individual capacities. Subsequently, on March 18, 2003, the defendants moved for summary judgment on each of Limberg's claims.
 {¶ 10} On June 6, 2003, the trial court granted the summary judgment motion. In its decision, the court found that Limberg had demonstrated that a genuine issue of material fact existed as to whether she could establish a prima facie case of age discrimination based on her transfer to a General Manager position. Specifically, the trial court concluded that Limberg had raised an issue of fact as to whether the transfer constituted an adverse employment action. However, the court concluded that McDonald's had proffered legitimate, nondiscriminatory reasons for her transfer, and that Limberg had not created an issue of fact that the asserted reasons were pretextual. As for the failure to hire claim, the trial court held that Limberg had failed to establish a prima facie case of discrimination, "because she had not introduced evidence to raise a question of fact on the issue of whether an employee with similar qualifications was promoted when she was denied a promotion." The court further concluded that the alleged discriminatory acts did not rise to the level of extreme and outrageous conduct, thus warranting summary judgment for the defendants on her intentional infliction of emotional distress claim. Finally, the court ruled that summary judgment was proper on the retaliation claim, because Limberg had not presented sufficient evidence of a causal connection between the filing of her lawsuit and the alleged adverse employment action.
 {¶ 11} Our review of the trial court's decision to grant summary judgment is de novo. See Helton v. Scioto Cty. Bd. ofCommrs. (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See Stateex rel. Grady v. State Emp. Relations Bd., 78 Ohio St.3d 181,183, 1997-Ohio-221, 677 N.E.2d 343; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 65-66, 8 O.O.3d 73,375 N.E.2d 46.
 {¶ 12} Limberg raises three assignments of error on appeal.
 {¶ 13} I. "The trial court erred and abused its discretion by granting the defendant-appellees' motion for summary judgment as to the issue of age discrimination."
 {¶ 14} A claim of age discrimination may be proven by either direct or circumstantial evidence. See, e.g., Byrnes v. LCICommunication Holdings Co., 77 Ohio St.3d 125, 128,1996-Ohio-307, 672 N.E.2d 145. To establish an age discrimination claim based upon circumstantial evidence, a plaintiff must show a prima facie case of discrimination. Id. at 128, citing Barker v.Scovill, Inc. (1983), 6 Ohio St.3d 146, 451 N.E.2d 807 (adopting the guidelines set forth in McDonnell Douglas Corp. v. Green
(1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668); Coryell v.Bank One Trust Co. N.A., 101 Ohio St.3d 175, 2004-Ohio-723,803 N.E.2d 781. Once this prima facie case is established, an inference of discrimination arises. The burden then shifts to the employer to show that it had a legitimate, nondiscriminatory reason for its action. See Kohmescher v. Kroger Co. (1991),61 Ohio St.3d 501, 503, 575 N.E.2d 439. If the employer articulates such a reason, the employee must show that the articulated reason was merely a pretext for discrimination. See id. at 503-04. The burden of persuasion, however, always remains with the plaintiff.St. Mary's Honor Ctr. v. Hicks (1993), 509 U.S. 502, 511,113 S.Ct. 2742, 125 L.Ed.2d 407. In evaluating discrimination claims, it is appropriate to look to analogous federal anti-discrimination statutes. See Plumbers Steamfitters JointApprenticeship Commt. v. Ohio Civil Rights Comm. (1981),66 Ohio St.2d 192, 421 N.E.2d 129; Wooten v. Columbus, Div. of Water
(1993), 91 Ohio App.3d 326, 334, 632 N.E.2d 605.
A. Transfer to a General Manager Position
 {¶ 15} Limberg claims that McDonald's discriminated against her on the basis of her age when it transferred her to the position of General Manager. The trial court concluded that, when construing the facts in the light most favorable to the plaintiff, Limberg could establish a prima facie case of age discrimination based on her transfer. McDonald's has not challenged that conclusion. The trial court further found that McDonald's had presented legitimate, nondiscriminatory reasons for transferring Limberg to a General Manager position. As stated by the trial court, McDonald's had indicated "that profits were down and a person experienced in restaurant management was needed to improve the underperforming restaurants and that the Plaintiff was the most capable of accomplishing this. Further, people who wanted to become Operations Managers needed experience in the Profit Center Trainer position and by transferring the Plaintiff, a position would open to allow someone interest[ed] in being promoted to Operations Manager to get the needed experience. Finally, the Plaintiff had no interest in becoming an Operations Manager." Accordingly, we turn to whether the trial court properly concluded that Limberg had failed to create a genuine issue of material fact that the proffered reasons for her transfer were pretextual.
 {¶ 16} In Manzer v. Diamond Shamrock Chem. Co. (C.A. 6, 1994), 29 F.3d 1078, a case involving discriminatory discharge, the Sixth Circuit indicated that an employee may demonstrate that her employer's explanation is pretextual by proving "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge." The court of appeals further elaborated on how these methods may be satisfied:
 {¶ 17} "The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are `factually false.' The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed `a suspicion of mendacity.' As Hicks teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.
 {¶ 18} "The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it `more likely than not' that the employer's explanation is a pretext, or coverup." (emphasis sic) Manzer, 29 F.3d at 1083-84
(citations omitted).
 {¶ 19} The United States Supreme Court has reiterated that a plaintiff's prima facie case, combined with evidence sufficient to refute the employer's proffered legitimate, nondiscriminatory reason for its actions, is sufficient to permit the factfinder to infer intentional discrimination on the part of the employer.Reeves v. Sanderson Plumbing Prods., Inc. (2000), 530 U.S. 133,120 S.Ct. 2097, 147 L.Ed.2d 105; Hicks, 509 U.S. at 511; seeHapner v. Tuesday Morning, Inc., Montgomery App. No. 19395, 2003-Ohio-781, ¶ 20. As stated in Reeves, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Id. at 147. The court reiterated, however, that a disbelief of the employer's explanation, coupled with the prima facie case, did not compel judgment for the plaintiff; it merely permitted an inference of discrimination. As we recognized in Hapner, the Supreme Court noted that "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." Id. at 148. It stated, by way of example, that an employer would be entitled to judgment as a matter of law "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Id. However, as expressed by Justice Ginsburg in her concurrence, it should be "uncommon" for a plaintiff to be required to present evidence beyond that necessary to establish a prima facie case and evidence from which a rational factfinder could conclude that the employer's proffered explanation for its actions was pretextual. Id. at 154-55.
 {¶ 20} Upon review of the record, we agree with the trial court that Limberg failed to demonstrate that McDonald's reasons for her transfer were pretextual. As noted by McDonald's, Limberg testified in her deposition that she was particularly qualified to work with under-performing restaurants to bring them back to profitability and to train the management staff. She also admitted that she did not want to be in an Operations Consultant position, which would have been the next step in promotion for her, and that it would be beneficial for persons aspiring to become Operations Managers to gain experience in the Profit Center Trainer position. Although Limberg argues that McDonald's was untruthful when it stated that the General Manager position was a promotion, Limberg has offered no evidence that McDonald'sreasons for her transfer were factually false or insufficient to motivate her transfer.
 {¶ 21} In addition, McDonald's has offered uncontroverted evidence that Stephen Thatcher, a thirty-five year old employee with fifteen years of experience with McDonald's, was transferred from an Operations Consultant II position into a General Manager position at the same time that Limberg was transferred. Thatcher stated in his affidavit that in March or April, 2001, he was assigned to the position of General Manger in the Columbus market, with the responsibility to take charge of two restaurants that the corporation had acquired from an owner-operator. Thatcher indicated that he was not given a job description for the General Manager position until after he had been in the job for some time, but that he was told that his role was to improve the performance of the two restaurants. Specifically, he was to improve the sales, profit, and management of the restaurants, which were under-performing at the time. Thatcher further stated that he was promoted to Operations Consultant after approximately one year in the General Manager position. Based on this undisputed evidence, Limberg has not shown that she was treated differently than similarly-situated younger employees.
 {¶ 22} Although not expressly stated, Limberg relies primarily upon the second Manzer approach to establishing pretext. Limberg emphasizes that McDonald's has wrongly insisted that the General Manager position was a promotion rather than a demotion. She further argues that she was not, in fact, responsible for two restaurants, and that the General Manager position did not exist prior to 2001, thus indicating that she was being put "out to pasture." In essence, Limberg has argued that age discrimination is the more likely reason for her transfer, because she, a good employee, was demoted rather than promoted and she was not given the responsibilities that she was led to believe that she would have. We disagree.
 {¶ 23} Even assuming that the General Manager position was a demotion, Limberg has not created a genuine issue of material fact that McDonald's reasons did not actually motivate her reassignment. Mossa indicated in her affidavit that she implemented the General Manager position in Dayton after seeing it used in the San Francisco market. Although the position did not exist in Dayton prior to 2001, Limberg has presented no evidence that it was created as a place to "park" her, and Mossa indicated that Limberg could have been promoted to other positions if she performed well as General Manager. Thatcher stated that he, in fact, was likewise reassigned to the General Manager position and was promoted to Operations Consultant after approximately a year as General Manager. Limberg's allegation that the reassignment was a demotion, without more, cannot establish that discrimination was the more likely reason for her transfer. Construing the evidence in the light most favorable to Limberg, she has not demonstrated that age discrimination actually motivated her transfer under Manzer. Accordingly, we conclude that the trial court did not err in concluding that Limberg failed to create a genuine issue of material fact that McDonald's proffered explanation for her transfer was pretextual.
B. Failure to Promote/Hire to Human Resource and DevelopmentConsultant
 {¶ 24} Limberg claims that the trial court erred in concluding that she had failed to establish a prima facie case that McDonald's discriminated against her on the basis of her age when it failed to hire her in or promote her to the position of HRD Consultant. In order to establish a prima facie case of age discrimination in hiring or promotion, Limberg must demonstrate (1) that she that she was a member of the statutorily protected class, (2) that she suffered an adverse employment action (i.e., she was not promoted or hired, despite applying for the position), (3) that she was qualified for the position, and (4) that the position was left open or a substantially younger individual was given the position. See Heath v. Ohio TurnpikeComm. (Jan. 4, 2004), C.A.6 No. 02-3392, unreported; Burzynskiv. Cohen (C.A. 6, 2001), 264 F.3d 611, 622; Bush v. DictaphoneCorp. (C.A. 6, 1998), 161 F.3d 363, 368; Shepard v. GriffinServs., Inc., Montgomery App. No. 19032, 2002-Ohio-2283; see also Coryell, supra (stating, in a case involving discriminatory discharge, that the fourth prong requires only that the plaintiff was replaced by or the discharge permitted the retention of a substantially younger individual).
 {¶ 25} We note that the Sixth Circuit has, at times, stated that the fourth element of the prima facie case requires the plaintiff to establish that the individual who was hired or promoted had either similar or less qualifications. See Roh v.Lakeshore Estates, Inc. (C.A. 6, 2001), 241 F.3d 491 (stating that the fourth element requires that the position was held open or given to a less qualified candidate); Nguyen v. City ofCleveland (C.A. 6, 2000), 229 F.3d 559, 562-63 (requiring that a non-protected employee with similar qualifications to the plaintiff receive the promotion). In our judgment, this additional requirement is unnecessary in establishing a prima facie case. Rather, if the successful candidate was allegedly hired or promoted due to her superior qualifications, as compared to the plaintiff's, that explanation may be offered by the employer as its legitimate, nondiscriminatory reason for selecting that candidate and may be challenged by the plaintiff under a pretext analysis. "To entertain the merits of the employer's legitimate, non-discriminatory justifications at the prima facie stage would potentially require [the plaintiff] to advance at that juncture her third stage rebuttal argument, thus defeating the role of the tripartite analysis engendered byMcDonnell Douglas." Franz v. Five Rivers Metroparks (S.D. Ohio 2002), 254 F. Supp.2d 753, 759-60.
 {¶ 26} Using the above framework, we conclude that Limberg had no trouble establishing a prima facie case of discrimination based on McDonald's failure to hire her into the vacant HRD Consultant position. Limberg was more than forty-years of age. She has presented evidence that she applied for the position, and McDonald's has not argued that she failed to meet the requisites for consideration for the job. In addition, a non-protected individual, Kimberly Fite, was hired to fill the vacancy.
 {¶ 27} Although the trial court incorrectly found that Limberg had failed to show a prima facie case of discrimination, on the ground that she had failed to raise a question of fact that Fite was an employee with similar qualifications, we need not remand to the trial court for consideration of pretext. It is undisputed that McDonald's has offered as its legitimate, nondiscriminatory reason that Fite was the more qualified candidate. The issue of pretext has been briefed both to the trial court and to this court. Moreover, the trial court evaluated whether Plaintiff created a genuine issue of material fact as to the veracity of McDonald's reason, albeit at the prima facie stage rather than the pretext stage. In light of the fact that we apply de novo review, we consider it appropriate for us to address the issue of pretext at this juncture.
 {¶ 28} Limberg argues that she was highly qualified for the HRD Consultant position. She indicates that she had training responsibilities as a Profit Center Trainer since 1996. She asserts that she had human capital development experience both as a Restaurant Manager and as a Profit Center Trainer; had supervised individuals; had addressed personnel challenges; had hired, fired, and promoted employees; had developed management training programs for McDonald's employees; and had worked closely with Human Resources in setting up training seminars on issues such as OSHA compliance, the laws regarding the use of minors in the workplace, sanitation, and quality expectations.
 {¶ 29} Although Limberg possessed the above skills, she acknowledged in her deposition that she never had any human resource responsibilities with McDonald's, and that she always tried to have the human resources department conduct the training on human resources issues, such as security, OSHA and personnel issues. Limberg testified that she did not have any human resources experience in any job that she had held, and that she had not had any training or course work in human resource management. Tanner testified that, during her interview, she had asked behavioral-based questions that provided Limberg an opportunity to give examples of work that she had done in the past or of how she would have approached certain situations or problems. Tanner indicated that based on her interview with Limberg, she (Tanner) did not feel that Limberg had "the required skills and competencies needed to be an HR Consultant," particularly the leadership skills.
 {¶ 30} As for Fite's qualifications, Fite testified that she had worked as a Restaurant Manager for McDonald's for several years. In 1999, after her restaurant was purchased by a franchisee, Fite stayed with the owner-operator and was promoted to the position of Human Resource/Training Manager for the owner's fourteen restaurants. Both Fite and Tanner indicated that Fite had more than one year of human resources experience with the owner-operator of the McDonald's franchise. Tanner stated that Fite had experience with staffing, recruiting and training. Tanner further testified that she had witnessed Fite handle succession planning sessions with her operator and had seen her in some high-conflict situations, and that Fite had displayed leadership skills. Comparing Fite to Limberg, Tanner concluded that Fite had superior leadership skills.
 {¶ 31} Upon review of the record as a whole, Limberg has not raised a question of fact as to whether McDonald's reason for selecting Fite instead of Limberg was pretextual. Limberg testified that she believed that only a person who has had education in human resources would be more qualified than she was. "Proving pretext requires more than the charging party's own subjective belief that [s]he was better qualified than the other applicants for a position." Minter v. Cuyahoga CommunityCollege (Feb. 17, 2000), Cuyahoga App. No. 76707. Both Fite and Limberg possessed experience as Restaurant Managers. Although Limberg had additional training and development experience as a Profit Center Trainer, she did not have any direct experience in human resources. Fite likewise had experience with staffing and training, yet she had the additional experience of having worked in a human resources position for more than one year. In addition, Fite had demonstrated to Tanner that she possessed strong leadership skills whereas Limberg had not. Based on the record, Limberg has created, at best, a weak issue of material fact as to whether McDonald's reason for hiring Fite (i.e., that Fite was more qualified) was untrue. Limberg has not raised any issue of fact as to whether Fite's qualifications were sufficient to justify her selection or as to whether age discrimination was the more likely reason for McDonald's actions.
 {¶ 32} As additional evidence of McDonald's alleged discriminatory motivation, Limberg states that she was told that her interview with Theresa Tanner, the decision-maker for the HRD Consultant position, was merely a "courtesy interview," and that others had told her that she did not have a chance of receiving the position. However, Tanner testified in her deposition that, at the time that she was made aware of Limberg's interest in the position, Sean Bauer had already been offered the position and had accepted it, and therefore the position was no longer available. Tanner indicated that a hiring freeze prevented Bauer from immediately assuming the position. Plaintiff has provided no evidence to the contrary. We find no evidence to support Limberg's claim that Tanner attempted to dissuade her from interviewing for an available position. Although Limberg asserts that Tanner never re-interviewed her after Bauer resigned from McDonald's (thereby reopening the HRD Consultant position), it is undisputed that Limberg's interview was good for six months. Morever, Tanner testified that she considered all staff that had expressed an interest in the position when it became available again.
 {¶ 33} Finally, Limberg cites to Patton's alleged statement she (Limberg) should "learn to live with" being in her General Manager position and that she should expect to hold that position for twelve to eighteen months. Although a discriminatory statement by a decision-maker may constitute circumstantial evidence that a discriminatory motive was a factor in the employment decision at issue, Byrnes, supra, Limberg has not presented such a statement. Patton's statement does not objectively reflect any discriminatory animus based on age, nor is there any evidence that she was involved in the decision to fill the HRD Consultant position. Ercegovich v. Goodyear Tire Rubber Co. (C.A. 6, 1998), 154 F.3d 344, 354 ("An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of age discrimination.").
 {¶ 34} Construing the evidence in the light most favorable to Limberg, there is no evidence, direct or circumstantial, that age played any role in the decisions to transfer Limberg to the General Manager position or to select Fite for the HRD Consultant position rather than the plaintiff. Accordingly, the trial court properly granted summary judgment on Limberg's claims of age discrimination.
 {¶ 35} Limberg's first assignment of error is overruled.
 {¶ 36} II. "The trial court erred and abused its discretion by granting the defendant-appellee's motion for summary judgment as to the issue of intentional infliction of emotional distress."
 {¶ 37} Limberg claims that the trial court erred in granting summary judgment on her claim of intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, a plaintiff must establish: (1) the defendant intended to cause emotional distress, or knew or should have known that their actions would result in serious emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused the plaintiff's psychic injury; and (4) the mental anguish that the plaintiff suffered was serious. Yeager v. Local Union 20
(1983), 6 Ohio St.3d 369, 453 N.E.2d 666; Hanly v. RiversideMethodist Hosps. (1991), 78 Ohio App.3d 73, 603 N.E.2d 1126.
 {¶ 38} Limberg has cited to extensive evidence that she suffered a serious psychic injury. However, even assuming that Limberg has suffered age discrimination and retaliation as she has alleged, we agree with the trial court that McDonald's conduct does not rise to the level of extreme and outrageous, as a matter of law. See Shepard v. Griffin Servs., Inc., Montgomery App. 19032, 2002-Ohio-2283; Bryans v. English Nannyand Governess Sch., Inc. (1996), 117 Ohio App.3d 303,690 N.E.2d 582; Godfredson v. Hess Clark, Inc. (C.A. 6, 1999),173 F.3d 365, 376 ("[A]n employee's termination, even if based upon discrimination, does not rise to the level of `extreme and outrageous conduct' without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress."). Accordingly, the trial court did not err in granting summary judgment on this claim.
 {¶ 39} Limberg's second assignment of error is overruled.
 {¶ 40} III. "The trial court erred and abused its discretion by granting the defendant-appellee's motion for summary judgment as to the issue of retaliation and reprisal in the workplace."
 {¶ 41} In her third assignment of error, Limberg claims that the trial court erred in granting summary judgment on her retaliation claim. R.C. 4112.02(I) states that it is an unlawful discriminatory practice: "for any person to discriminate * * * against any other person because that person * * * has made a charge, testified, * * * or participated * * * in any investigation, proceeding, or hearing under sections 4112.01 to4112.07 of the Revised Code." In order to demonstrate a prima facie case of retaliation, a plaintiff must establish: (1) that she engaged in protected activity; (2) that the defendant knew she had engaged in a protected activity; (3) that she was subjected to an adverse employment action; and (4) that a causal link existed between the protected activity and the adverse action. Shepard, supra; Edwards v. Dubruiel, Greene App. No. 2002-CA-50, 2002-Ohio-7093, ¶ 39. Once a plaintiff establishes a prima facie case, it is the defendant's burden to articulate a legitimate reason for its action. Edwards, supra. If the defendant meets its burden, the burden shifts back to the plaintiff to show that the articulated reason was a pretext for retaliation.
 {¶ 42} In her complaint, Limberg alleged that after filing her age discrimination lawsuit, McDonald's retaliated against her by transferring her to the Stroop Road restaurant, where she was stripped of supervisory responsibilities and required to perform crew work. McDonald's has argued that Limberg did not suffer an adverse employment action, because the non-managerial position was temporary and she retained the title, pay and benefits of a General Manager. McDonald's has further asserted that Limberg cannot demonstrate a causal connection, because the lapse of six months between the filing of her lawsuit and the Stroop Road assignment precludes an inference of retaliation. In addition, McDonald's claims that it restricted Limberg's job duties in order to comply with her medical restrictions. The trial court granted summary judgment to McDonald's, on the ground that Limberg had failed to demonstrate the requisite causal connection. It noted that the only evidence of a causal connection that was presented by Limberg was the temporal proximity, which was insufficient, by itself, to support of inference of retaliation. The court further recognized the Limberg was on medical restrictions when she returned to work in April, 2002, and could only perform limited duties. The court thus concluded that McDonald's had set forth legitimate reasons for its actions.
 {¶ 43} It is undisputed that Limberg engaged in a protected activity, namely the filing of her lawsuit against McDonald's, and that her supervisors were aware of that action. As for whether Limberg suffered an adverse employment action, Limberg asserts that she was placed in a demeaning crew position with significantly reduced responsibilities and authority, well beyond her medical restrictions. Even assuming that this conduct constitutes an adverse action, we agree with McDonald's that the temporary nature of her reassignment is dispositive.
 {¶ 44} The Sixth Circuit has distinguished between permanent adverse employment actions and those that are only temporary. SeeBowman v. Shawnee State Univ. (C.A. 6, 2000), 220 F.3d 456 (ten day suspension was not an adverse employment action, because of the adverse action was temporary and resulted in no loss of income); Rushton v. City of Warren (Feb. 19, 2004), C.A.6 No. 02-1536; Yates v. Avco Corp. (C.A. 6, 1987), 819 F.2d 630, 638
(no adverse employment action, because the temporary transfer resulted in no pay or benefits reduction). In the present case, Limberg was assigned non-managerial duties between April 3, 2002, when she returned from short-term disability leave, and June 1, 2002, when she began her sabbatical. Limberg has not refuted McDonald's assertion that she was reinstated to her managerial position upon her return from her sabbatical. Although Limberg argues that she was placed in a Restaurant Manager position upon her return, she has not asserted that she was placed in a lower position than the one that she held prior to the initiation of her litigation. Because of the short duration of the alleged adverse action, Limberg's transfer to non-managerial duties was not an adverse employment action, as a matter of law. Accordingly, the trial court properly granted summary judgment on Limberg's retaliation claim.
 {¶ 45} Limberg's third assignment of error is overruled.
 {¶ 46} The judgment of the trial court will be affirmed.
Fain, P.J. and Grady, J., concur.