OPINION
{¶ 1} Jacalyn A. Wysong appeals from the trial court's entry of summary judgment against her on a retaliatory discharge claim against her former employer, appellee Jo-Ann Stores, Inc.
 {¶ 2} In her sole assignment of error, Wysong contends summary judgment is inappropriate because a genuine issue of material fact exists as to whether Jo-Ann Stores' proffered reason for firing her is pretextual.
 {¶ 3} The record reflects that Wysong began working for Jo-Ann Stores in April of 2003, serving as a "Merchandise Team Leader" in Huber Heights, Ohio. She subsequently transferred to a store in Kettering, Ohio, where she worked as an "Operations Team Leader." In that capacity, she performed physical labor and had some managerial responsibilities.
 {¶ 4} Wysong sustained workplace injuries on April 6, 2004, when she fell from a rolling ladder. She visited a doctor and returned to work with some restrictions two days later. Wysong continued working until April 17, 2004, when she began calling off. She then consulted another physician, Dr. Thomas Konicki, who determined that she was unable to perform any work. As a result, Wysong filed a workers' compensation claim on May 15, 2004.
 {¶ 5} In connection with the claim, Wysong's attorney sent a letter to Jo-Ann Stores and the Ohio Bureau of Workers' Compensation on June 8, 2004. Attached to the letter were various company documents that Wysong had removed from the store and photocopied without her employer's knowledge. On June 14, 2004, Jo-Ann Stores employees Laura Verhoff and Tricia Eckert called Wysong and asked how her attorney had obtained the documents, which consisted of some payroll summary reports, daily sales planners, and a corporate e-mail. In response, Wysong admitted that she had removed the documents from the store and given them to her counsel. After speaking to Wysong, Verhoff consulted another Jo-Ann Stores representative, Karen Kaminski. Verhoff also spoke to Wysong's store manager, Annette Dawson, who told her that the documents had been missing.
 {¶ 6} Jo-Ann Stores took no immediate action against Wysong following the telephone conversation in which she admitted removing company documents from the store and giving them to her attorney. Wysong remained off of work pursuant to her doctor's instructions until July 9, 2004. At that time, she returned to work in a new position that the company had created to accommodate her injuries. On July 14, 2004, however, Verhoff and Kaminski jointly decided to fire Wysong for unauthorized removal of the company documents. Verhoff spoke to Wysong by telephone on that date and informed her of the termination.
 {¶ 7} Wysong commenced the present action on January 10, 2005, asserting various legal claims against Jo-Ann Stores. The claims included a cause of action alleging that Jo-Ann Stores had fired Wysong in retaliation for seeking workers' compensation benefits. On November 30, 2005, the trial court entered summary judgment against Wysong on all counts. With regard to the retaliatory discharge claim, the trial court assumed, arguendo, that Wysong had established a prima facie case. It then found that Jo-Ann Stores had set forth a legitimate, non-retaliatory reason for firing Wysong, namely her unauthorized removal of company documents. Finally, the trial court found no evidence suggesting that the company's proffered reason for firing Wysong was pretextual.
 {¶ 8} On appeal, Wysong challenges only the trial court's entry of summary judgment against her on the retaliatory discharge claim. She contends a genuine issue of material fact exists as to whether Jo-Ann Stores fired her because she removed documents from the store or because she filed a workers' compensation action. Wysong claims she submitted evidence establishing that Jo-Ann Stores more likely than not terminated her because of the workers' compensation action. Alternatively, Wysong argues that her termination was the result of "mixed motives" on the part of Jo-Ann Stores. Wysong then contends her retaliatory discharge claim should survive summary judgment if Jo-Ann Stores terminated her based in part on her filing of a workers' compensation claim.
 {¶ 9} In response to Wysong's arguments, Jo-Ann Stores contends she failed to establish even a prima facie case of retaliatory discharge. The company also argues that the trial court properly found no evidence of pretext. Finally, Jo-Ann Stores asserts that Wysong waived her mixed-motive argument by failing to raise it below and that, in any event, such an analysis is inapplicable to a retaliatory discharge claim under R.C. § 4123.90. In her reply brief, Wysong argues that Jo-Ann's itself "leapfrogged" the prima facie case elements in its summary judgment motion and focused instead on her inability to refute its professed reason for firing her. Wysong also reiterates her argument that a genuine issue of material fact exists on the issue of pretext.
 {¶ 10} We begin our own analysis with a review of R.C. §4123.90, which provides that "[n]o employer shall discharge * * * any employee because the employee filed a claim * * * under the Workers' Compensation Act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer." Absent direct evidence of retaliation, which Wysong does not purport to possess, her retaliatory discharge claim under R.C. § 4123.90 must be analyzed under the familiar burden-shifting approach applicable to most discrimination claims. Under that approach, "the employee must set forth a prima facie case of retaliatory discharge, then the employer must set forth a legitimate nonretaliatory reason for the discharge and, finally, the employee must establish that the employer used that nonretaliatory reason as a pretext for discharging the employee for activity protected by the Workers' Compensation Act."Markham v. Earle M. Jorgensen Co. (2000), 138 Ohio App.3d 484,492.
 {¶ 11} On appeal, Jo-Ann Stores initially disputes Wysong's ability to satisfy the elements of a prima facie case of retaliatory discharge. Although the trial court presumed Wysong's ability to do so, Jo-Ann Stores urges us to find otherwise. We decline this invitation. A review of the company's motion for summary judgment reveals only a passing reference to the prima facie case requirements. Instead of seeking summary judgment based on Wysong's inability to establish a prima facie case, Jo-Ann Stores argued that it was entitled to judgment as a matter of law because Wysong could not show that its proffered reason for her termination was pretextual. Given that Jo-Ann Stores' summary judgment motion was not directed toward the prima facie case requirements, the trial court properly presumed Wysong's ability to satisfy those requirements and proceeded to address the pretext issue.
 {¶ 12} In any event, the record persuades us that the prima facie case requirements have been satisfied. The only issue disputed by Jo-Ann Stores is Wysong's ability to satisfy the last element, which requires her to demonstrate an inference of a causal connection between her firing and her filing of a workers' compensation claim.[1] With regard to this issue, we note that Wysong was injured on April 6, 2004. Shortly after her injury, Wysong contends her manager, Annette Dawson, told her not to file a workers' compensation claim. Wysong filed such a claim, however, on May 15, 2004. Jo-Ann Stores learned of the filing no later than June 14, 2004, when Wysong's attorney sent the company a letter regarding the claim. Jo-Ann Stores then fired Wysong one month later after she returned to work. In our view, the foregoing facts are sufficient to establish a prima facie case of retaliatory discharge and to shift the burden of production to Jo-Ann Stores to provide a non-retaliatory explanation for its actions. In reaching this conclusion, we recognize that "[t]he burden of establishing a prima facie case of retaliation is not onerous and is easily met." Greer-Burger v. Temesi, Cuyahoga App. No. 87104, 2006-Ohio-3690, ¶ 15.
 {¶ 13} As noted above, however, Jo-Ann Stores did provide a non-retaliatory explanation for its decision to fire Wysong: she removed company documents from the store without authorization. Faced with this explanation, Wysong is required to demonstrate a genuine issue of material fact on the issue of pretext. She may meet this burden by presenting evidence that Jo-Ann Stores' proffered reason (1) had no basis in fact, (2) did not actually motivate her discharge, or (3) was insufficient to motivate her discharge. Senu-Oke v. Dayton City School Dist. Bd. of Educ.,
Montgomery App. No. 20967, 2005-Ohio-5239, ¶ 31.
 {¶ 14} For summary-judgment purposes, Wysong is obligated only to call into question the truthfulness of Jo-Ann Stores' non-retaliatory reason for acting as it did. The potential falsity of an employer's purported justification does not necessarily establish liability, as a trier of fact still must find that the employer's true reason for acting as it did was a retaliatory animus. But when potential falsity has been demonstrated, a trier of fact may conclude that retaliation was "the most likely alternative explanation." Grooms v. SupportingCouncil of Preventative Effort, 157 Ohio App.3d 55, 68,2004-Ohio-2034, citing Reeves v. Sanderson Plumbing Prod., Inc.
(2000), 530 U.S. 133, 147. Therefore, a retaliatory discharge claim survives summary judgment if a plaintiff raises a genuine issue of material fact as to the veracity of an employer's explanation. Id.
 {¶ 15} In the present case, however, we find no genuine issue of material fact on the issue of pretext. Wysong's appellate brief reveals that she is attempting to establish pretext primarily under the second of the three approaches identified inSenu-Oke, supra. Under that approach, she must "indict the credibility of [her] employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." Limberg v.Roosa, Montgomery App. No. 19988, 2004-Ohio-1480, ¶ 18. In other words, she must show "that the sheer weight of the circumstantial evidence of discrimination makes it `more likely than not' that the employer's explanation is a pretext, or coverup." Id. (citation omitted).
 {¶ 16} In an effort to show pretext, Wysong first cites the passage of time between her admission to taking documents from the store and her termination one month later. Wysong contends this delay is indicative of pretext because it was "inordinately long." She also argues that the company's decision to allow her back to work shortly before firing her is evidence of pretext.
 {¶ 17} We find these arguments to be unpersuasive. During her deposition, Verhoff could not recall specifically why it took a month to fire Wysong after she admitted taking company documents without authorization. Verhoff testified, however, that she handles the termination of Jo-Ann Stores' employees across a large part of the United States. She also explained that her investigation into Wysong's actions consisted of calling Wysong, then talking to company representative Karen Kaminski, consulting the company's legal counsel, speaking to Wysong's own store manager, and reviewing two company policy manuals. The fact that one month passed before Verhoff completed these activities and decided to fire Wysong simply does not create a reasonable inference of retaliation for Wysong's filing of a workers' compensation claim. Nor does the fact that Jo-Ann Stores allowed Wysong to return to work briefly before her termination. Wysong fails to persuade us that her return to work supports a reasonable inference of any retaliatory animus by the company.
 {¶ 18} Wysong next argues that the company's "inconsistent and arbitrary decision to terminate" is evidence of pretext. In support, she cites Verhoff's testimony that Jo-Ann Stores sometimes issues warnings to employees who violate workplace rules, depending on the severity of the infraction and other case-specific considerations. Wysong then asserts that her act of removing documents without authorization is less serious than offenses Verhoff cited as possibly deserving only a warning, such as arguments between employees and dress-code violations. Wysong also cites Verhoff's testimony that sometimes employees are warned rather than discharged if they have a good reason for their actions or if they were unaware of the company policy at issue. Wysong argues that she did have a good reason for removing the documents and that she was unaware of Jo-Ann Stores' policy prohibiting their removal. Wysong also asserts that the company lacks a comprehensible policy on the removal of documents, suggesting that its enforcement of the policy is pretextual.
 {¶ 19} The foregoing arguments fail to raise a genuine issue of material fact on the issue of pretext. The fact that Verhoff considered the unauthorized removal of company documents to be more serious than an argument between employees or a dress-code violation simply does not create a reasonable inference of pretext. Nor does the fact that Wysong subjectively believes her misconduct deserved only a warning. As Jo-Ann Stores notes, we do not sit as a super-personnel department to second-guess a company's discretionary decisions. Shepard v. Griffin Services,Inc., Montgomery App. No. 19032, 2002-Ohio-2283. This is not to say, of course, that we must accept all employer-offered explanations at face value. But in order to raise an inference of pretext for retaliation, Wysong must show more than a belief that her discipline was too harsh and that she should have received a warning. For example, she possibly could create an inference of pretext by demonstrating that Verhoff failed to fire other employees who removed company documents from Jo-Ann Stores without authorization. She cannot make this showing here, however, because Verhoff testified that she is unaware of any other employees ever engaging in such misconduct. Wysong has no evidence to the contrary. But absent this type of evidence, Wysong's personal belief that she should have received a warning does not undermine the company's proffered reason for firing her.
 {¶ 20} We are equally unpersuaded by Wysong's argument that the company's policy on the removal of documents is so incomprehensible that it must be a pretext for retaliation. The specific policy at issue states:
 {¶ 21} "The following is a list of policy violations that are considered by the Company to be serious and a proper cause for discipline, up to and including immediate termination.
 {¶ 22} " Theft and authorized use of Company property
including the taking of Company funds or merchandise or property, any other act of theft or dishonesty, or failure to report to management such acts by another team member. This also includes using or consuming merchandise without first purchasing it as evidenced by a register receipt." (Emphasis added).
 {¶ 23} Jo-Ann Stores concluded that Wysong's removal of company documents from her store without permission constituted the unauthorized use of company property. Wysong argues, however, that the foregoing provision applies to items such as money and merchandise rather than company documents. Although Wysong's interpretation of the policy is perhaps understandable, we note that its reference to "funds or merchandise" appears to be illustrative only and not exhaustive with regard to what constitutes company property. Indeed, another policy violation on the same list quoted above expressly identifies "company property" as including "paperwork files, or computer information." In any event, even assuming, arguendo, that Jo-Ann Stores' written policy were ambiguous as to whether company property includes company documents, Verhoff's interpretation of the policy is not so unreasonable as to support an inference of pretext. As we stated above, employers must have some leeway in interpreting their own rules and imposing discipline. We cannot say that Verhoff's interpretation of the foregoing policy is unreasonable, and we find no evidence of pretext based on her decision to discipline Wysong for violating it.
 {¶ 24} Wysong also cites Annette Dawson's "warning" not to file a workers' compensation claim as evidence that the company's proffered explanation for her discharge is pretextual. This argument lacks merit. When Wysong was injured in April, 2004, her supervisor, Dawson, allegedly told her not to file a workers' compensation claim. Wysong filed such a claim, however, on May 15, 2004. Jo-Ann Stores learned of the filing no later than June 14, 2004, and fired her one month later. Although we have found this evidence sufficient to establish a prima facie case of retaliation, it fails to create a genuine issue of material fact as to whether Jo-Ann Stores' proffered reason for firing Wysong is pretextual.
 {¶ 25} We reach the foregoing conclusion based on the absence of evidence linking Dawson's statement to Wysong's termination. Even if we construe Dawson's remark as revealing personal animosity against employees who file workers' compensation claims, the record is devoid of evidence that Verhoff, who was the decision maker with regard to Wysong's firing, harbored any such animosity herself. It is true that Verhoff spoke to Dawson, and others, prior to firing Wysong. But Verhoff testified that she only asked Dawson about Wysong's removal of company documents, and we find no evidence to the contrary. The record does not reflect that Dawson advised Verhoff to fire Wysong or even mentioned the filing of a workers' compensation claim. In our view, the fact that Dawson, a non-decision maker with regard to Wysong's discharge, may have told her not to file a workers' compensation claim does not support a reasonable inference of pretext. Because it cannot be linked to Verhoff's decision making process, Dawson's statement fails to support an inference that Verhoff cited Wysong's misconduct in removing documents as a pretext to fire her for filing a workers' compensation claim. Cf.McDonald v. Union Camp Corp. (6th Cir. 1990),898 F.2d 1155, 1161 ("[A] statement by an intermediate level management official is not indicative of discrimination when the ultimate decision to discharge is made by an upper level official.");Harris v. Giant Eagle, Inc. (6th Cir. 2005), 133 Fed. Appx. 288, 2005 WL 1313147 (recognizing that "remarks made by an individual who has no authority over the challenged employment action are not indicative of discriminatory intent").
 {¶ 26} The only other possible evidence of retaliation is the temporal proximity between Wysong's filing of her workers' compensation claim and her discharge. In our view, however, the timing of Wysong's termination is not so suspicious as to create a genuine issue of material fact on the issue of pretext. Mere temporal proximity between an employee's protected activity and an adverse employment action typically is insufficient to support an inference of retaliation. Aycox v. Columbus Bd. of Educ.,
Franklin App. No. 03AP-1285, 2005-Ohio-69, ¶ 20; Hall v. BancOne Management Corp., Franklin App. No. 04AP-905, 2006-Ohio-913, ¶ 47, appeal allowed, 110 Ohio St.3d 1409 (recognizing that "intervals of two to four months between protected activity and adverse action [are] insufficient to show a causal connection"). In the present case, Wysong filed her workers' compensation claim on May 15, 2004, and Jo-Ann Stores fired her on July 14, 2004, after discovering that she had removed company documents without authorization. These facts do not support a reasonable inference that Verhoff's proffered reason for firing Wysong is pretextual.
 {¶ 27} Finally, we reject Wysong's argument regarding a "mixed-motive" theory of recovery. Under a mixed-motive analysis, Wysong contends she must prove only that her filing of a workers' compensation claim was a substantial, motivating factor in Verhoff's termination decision even if her misconduct in removing documents also played a role. In response, Jo-Ann Stores argues that mixed-motive analysis does not apply to retaliatory discharge claims under R.C. § 4123.90. The company also argues that Wysong waived her mixed-motive argument by failing to raise it in the trial court.
 {¶ 28} Upon review, we agree that Wysong waived any mixed-motive argument by not raising it below. But even setting aside the issue of waiver and assuming, arguendo, that mixed-motive analysis is available under the statute, the issue would be whether a reasonable trier of fact could find that Wysong's filing of a workers' compensation claim was a substantial, motivating factor in Verhoff's termination decision.Harris, supra. Based on the same reasoning set forth above, we conclude that the record lacks sufficient evidence to support such a conclusion. Accordingly, we hereby overrule Wysong's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
Grady, P.J., concurs.
Donovan, J., concurs in judgment only.
[1] In its appellate brief, Jo-Ann Stores cites Wilson v.Riverside Hosp. (1985), 18 Ohio St.3d 8, for the proposition that a plaintiff must prove a discharge in contravention of R.C. § 4123.90 in order to establish a prima facie case. In reality, however, Wilson states that a plaintiff must allege a discharge in violation of the statute to state a claim upon which relief may be granted. Wilson involved a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. It did not address the showing a plaintiff must make to establish a prima facie case of retaliatory discharge in violation of R.C. § 4123.90. Jo-Ann Stores also cites other cases for the proposition that a plaintiff must prove a causal link between the protected activity and the adverse employment action in order to set forth a prima facie case of retaliatory discharge. See, e.g., Chandler v.Empire Chem., Inc. (1994), 99 Ohio App.3d 396, 402; White v.Mt. Carmel Med. Ctr., 150 Ohio App.3d 316, 328, 2002-Ohio-6446. In our view, however, a plaintiff cannot be required to prove the existence of a causal link between her termination and her filing of a workers' compensation claim at the prima facie case stage. Indeed, if an employee truly were required to prove her claim at that early stage, there would be no point in applying the rest of the burden-shifting approach. The case would be over. Thus, at the prima facie case stage, a plaintiff only needs to present evidence sufficient to create an inference that a causal link exists between her discharge and her filing of a workers' compensation claim. Although many Ohio cases purport to require proof of such a link, all they really demand is the presentation of some evidence to support an inference that a link exists.