OPINION *Page 2 
{¶ 1} Plaintiff-appellant Dwight Feurer ("Feurer") brings this appeal from the judgment of the Court of Common Pleas of Marion County granting summary judgment to defendant-appellee Ohio Heartland Community Action Commission ("Heartland").
 {¶ 2} On November 25, 2003, Feurer was placing an engine heater on his bus. When he bent down to plug in the heater, he twisted his knee causing him pain. The pain continued through the next day and Feurer eventually sought medical treatment. At the emergency room, Feurer completed a "First Report of an Injury, Occupation Disease, or Death" form for the Ohio Bureau of Workers Compensation ("the Bureau"). On December 1, 2003, Feurer's next work day, he reported the injury to Heartland. Feurer was asked to complete a second "First Report of an Injury, Occupation Disease, or Death" form and did so. On December 3, 2003, Heartland notified Feurer that it would not certify his injury to the Bureau because the report was not timely made. Feurer continued to press the *Page 3 
complaint and on December 24, 2003, the Bureau allowed the claim over the objection of Heartland.
 {¶ 3} On January 26, 2004, Heartland agents met with Feurer and questioned him about his ability to perform his job as a bus driver. Feurer assured Heartland that he could still do his job and signed a statement to that effect. Heartland then asked him to list all medications he was currently taking and Feurer complied. Heartland subsequently contacted the hospital and asked about the medications Feurer was prescribed. Heartland was informed by a nurse that one of the medications Feurer was taking was a pain pill. Heartland then determined that Feurer could not safely perform his job because of the medication and terminated his employment as of February 2, 2004. Heartland stated that the "principal reasons for the termination are [Feurer's] misrepresentation of material facts in [Feurer's] application for employment and related documents and [Feurer's] violation of the Drug Free Policy mandating notification to [his] supervisor of [Feurer's] use of medications that have the capability of prohibiting safe and effective job performance." Devaney Letter.
 {¶ 4} On July 29, 2004, Feurer filed a complaint alleging 1) retaliatory discharge in violation of R.C. 4123.90, 2) tortious wrongful discharge in violation of Ohio public policy, 3) tortious wrongful discharge in violation of public policy as established in R.C. 4123.56, 4) unlawful employment discrimination in *Page 4 
violation of R.C. 4112.01, et seq., and 5) tortious wrongful discharge in violation of public policy as established by R.C. 4112.01 et seq.. Heartland filed an answer on September 20, 2004, denying all the allegations and raising the following counterclaims: 1) fraud, 2) breach of contract, 3) promissory estoppel, 4) intentional misrepresentation, and 5) negligent misrepresentation. Feurer then filed an answer to the counterclaims on October 19, 2004. On March 15, 2005, Feurer filed an amended complaint adding four claims of unlawful employment discrimination in violation of the Americans with Disabilities Act and one claim of tortious discharge in violation of public policy to his original claims. Heartland filed an amended answer on March 31, 2005. On January 5, 2006, Heartland voluntarily dismissed its counterclaims pursuant to Civ. R. 41(A)(1)(a). Heartland then filed on May 30, 2006, a motion for summary judgment on all of Feurer's claims. Feurer filed a motion for partial summary judgment on that same day. On August 25, 2006, the trial court granted summary judgment on all claims to Heartland and overruled Feurer's motion for summary judgment. Feurer appeals from this judgment and raises the following assignments of error.
 The trial court erred by disregarding the testimony submitted in paragraph four of [Feurer's] supplemental affidavit.
 The trial court erred in granting [Heartland's] motion for summary judgment as to [Feurer's] first cause of action for retaliatory discharge in violation of [R.C. 4123.90]. *Page 5 
 The trial court erred in granting [Heartland's] motion for summary judgment as to [Feurer's] second cause of action for tortious wrongful discharge in violation of Ohio Public Policy as established by [R.C. 4123.90].
 The trial court erred in granting [Heartland's] motion for summary judgment as to [Feurer's] third cause of action for unlawful retaliation in violation of [R.C. 4123.90].
 The trial court erred in granting [Heartland's] motion for summary judgment as to [Feurer's] fourth cause of action for tortious wrongful discharge in violation of Ohio Public Policy as established by [R.C. 4123.56] and Coolidge v. Riverdale Local School District (2003), 100 Ohio St.3d 141.
 The trial court erred in granting [Heartland's] motion for summary judgment as to [Feurer's] fifth cause of action for unlawful employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12001, et seq..
 The trial court erred in granting [Heartland's] motion for summary judgment as to [Feurer's] sixth cause of action for tortious wrongful discharge in violation of Ohio Public Policy as established by the Americans with Disabilities Act, 42 U.S.C. § 12001, et seq..
 The trial court erred in granting [Heartland's] motion for summary judgment as to [Feurer's] seventh cause of action for unlawful employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12001, et seq..
 The trial court erred in granting [Heartland's] motion for summary judgment as to [Feurer's] eighth cause of action for unlawful employment discrimination in violation of [R.C. 4112.01] et seq..
 The trial court erred in granting [Heartland's] motion for summary judgment as to [Feurer's] ninth cause of action for tortious wrongful discharge in violation of Ohio Public Policy as established by [R.C. 4112.01] et seq.. *Page 6 
 The trial court erred in granting [Heartland's] motion for summary judgment as to [Feurer's] tenth cause of action for unlawful employment discrimination in violation of [R.C. 4112.01] et seq..
 {¶ 5} When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate.Franks v. The Lima News (1996), 109 Ohio App.3d 408, 672 N.E.2d 245. "Civ. R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issues as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589, 639 N.E.2d 1189. When reviewing the judgment of the trial court, an appellate court reviews the case de novo.Franks, supra.
 Before ruling on a motion for summary judgment, the trial court's obligation is to read the evidence most favorably for the nonmoving party to see if there is a "genuine issue of material fact" to be resolved. Only if there is none does the court then decide whether the movant deserves judgment as a matter of law. The material issues of each case are identified by substantive law. As the United States Supreme Court has explained, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Page 7 
Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 12, 850 N.E.2d 47
(citation omitted).
 {¶ 6} Feurer's first assignment of error raises the question whether his affidavit contradicts his prior deposition testimony or supplements it. "[W]hen determining the effect of a party's affidavit that appears to be inconsistent with the party's deposition and that is submitted either in support of or in opposition to a motion for summary judgment, a trial court must consider whether the affidavit contradicts or merely supplements the deposition." Id. at ¶ 26. If there is an inconsistency, the trial court must then look for any explanation for the inconsistency. Rollison v. Ball, 3rd Dist. No. 9-05-48, 2006-Ohio-5153, ¶ 21.
 {¶ 7} In this case, Feurer stated in his deposition that he did not remember the questions he was asked by the physician's assistant during his initial physical exam for his employment. In a subsequent affidavit, Feurer states that he was asked questions from a preprinted form, but no additional questions were asked concerning medications during the physical exam. Although this testimony is different from that of the deposition, it is not necessarily inconsistent. Between the time Feurer's deposition was taken on November 16, 2005, and the date of his affidavit, June 21, 2006, Rebekah Moore's ("Moore") deposition was taken and Feurer was present for it. Moore is the physician assistant who performed Feurer's physical exam. During her deposition on April 25, 2006, Moore testified *Page 8 
that she read verbatim questions from a form concerning prescription medication. Moore also testified that she usually asks a patient "about any kind of medication they're taking[.]" Moore Dep., 33. However, Moore never testified that she definitely asked Feurer these questions, just that she normally does. Feurer then submitted his affidavit two months later stating that the additional questions were not asked. A person could reasonably conclude that Feurer's memory may have been refreshed by hearing the testimony of Moore during her deposition. The mere fact that one later remembers what was not known at a prior deposition does not make them contradictory. While it may go to the credibility of the witness, the differences in the affidavit can reasonably be concluded to be a supplement to the prior deposition.
 {¶ 8} Even if this court were to find that the affidavit contradicts the prior deposition testimony as requested by Heartland, the record indicates a reasonable explanation for the inconsistency. Additionally, there is no evidence that Moore specifically asked Feurer to list his medications, just a claim that she normally discusses current medications with patients as part of her exam. Moore did not testify to what specific questions she asks the patient. The only undisputed evidence is that she asked Feurer whether he had a current "clinical record of use of legally prescribed medication which is likely to interfere with a person's ability to control and safely operate a school bus." Moore Exhibit 2, 2. Given this *Page 9 
evidence, there is a question of material fact as to whether Feurer was previously asked to list his medications as claimed by Heartland. For these reasons, the first assignment of error is sustained.
 {¶ 9} All of the remaining assignments of error question whether the trial court erred in granting summary judgment on each of the claims. The second assignment of error claims that the trial court erred in granting summary judgment on Feurer's retaliatory discharge claim. To support a claim for retaliatory discharge under R.C. 4123.90, a plaintiff must show 1) he was injured on the job; 2) he filed a workers' compensation claim; and 3) he was discharged in retaliation for filing the claim. Wilson v. Riverside Hosp. (1985), 18 Ohio St.3d 8,479 N.E.2d 275. The parties do not dispute that Feurer was injured on the job and filed a workers' compensation claim. The only disputed element is whether Feurer was discharged for filing the claim. Feurer presented undisputed evidence showing that prior to the accident, he was given good performance reviews and no one questioned his ability. Within one month of the Bureau approving the claim over the objection of Heartland, Heartland became concerned about Feurer's abilities and began reviewing his employment application. Feurer's employment was terminated less than six weeks after his claim was approved. The closeness in time between the claim and his termination is evidence of retaliatory action. *Page 10 Wysong v. Jo-Ann Stores, Inc., 2nd Dist. No. 21412, 2006-Ohio-4644. Thus, Feurer presented a prima facia case of retaliatory discharge.
 {¶ 10} Once a plaintiff has made a prima facie case, the burden shifts to the defendant to provide a legitimate, nonretaliatory reason for the discharge. Id. If the employer can do so, the burden shifts back to the plaintiff to provide some evidence that the reason was a pretext. Here, Heartland claimed that Feurer was terminated for falsifying his application and for his inability to do the job as shown by a doctor's restriction on the weight Feurer can lift. Feurer then presented evidence from his doctor that he could perform the task and claimed that he did not falsify his application. Viewing the evidence in a light most favorable to Feurer, there are genuine issues of material fact as to whether the reasons for termination were legitimate or were pretexts to cover a retaliation. Therefore, the trial court erred in granting summary judgment on this claim. The second assignment of error is sustained.
 {¶ 11} In the third assignment of error, Feurer claims that the trial court erred in granting summary judgment on its claim for tortious wrongful discharge in violation of public policy as set forth in R.C 4123.90. The Ohio Supreme Court has set forth the requirements for establishing a wrongful discharge claim.
 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element). *Page 11 
 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).
Collins v. Rizkana (1995), 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653. The first two elements are questions of law for the court and the last two are questions of fact. Klopfenstein v. NK Parts Industries, Inc., 3rd Dist. No. 17-05-05, 2007-Ohio-1916, ¶ 16.
 {¶ 12} The law clearly provides that no employer shall terminate an employee for filing a workers' compensation claim. R.C. 4123.90. Thus, the clarity element is met. If Feurer's claim is believed and he was terminated for filing the claim, the dismissal would jeopardize the public policy, meeting the jeopardy element. The two questions of law, when the evidence is viewed in a light favoring Feurer, are satisfied. The two questions of fact that remain are to determine whether Feurer was terminated for filing the claim or if the employer had legitimate business justification for the termination. These questions, as previously discussed, are disputed. Thus, genuine issues of material fact exist which would preclude summary judgment on this claim. The third assignment of error is sustained. *Page 12 
 {¶ 13} The fourth, eighth, and eleventh assignments of error all claim that the trial court erred in dismissing the third, seventh, and tenth causes of action. These causes of action were all based upon Heartland's filing of a counterclaim against Feurer. The counterclaim was dismissed without prejudice. Based upon that dismissal, the trial court granted summary judgment on Feurer's responsive claims. When a claim is dismissed without prejudice, the claims can subsequently be refiled as no judgment on the merits has been entered. Civ. R. 41. However, when summary judgment is granted, it is a judgment on the merits and terminates the case. Civ. R. 56. Claims on which summary judgment is granted cannot be refiled. By granting summary judgment on these claims, the trial court in effect permits Heartland to refile its claims while Feurer would be denied his claims by the doctrine of res judicata. In addition, the sole reason the trial court granted the motion was because the counterclaims had been dismissed. This is not a judgment on the merits. Feurer filed these claims because of Heartland's actions. The fact that the claims were withdrawn later does not change the fact that they were filed and that Feurer suffered additional expense as a result. Thus, there is a genuine issue of material fact as to whether the counterclaims were retaliatory and whether Feurer is entitled to damages. The fourth, eighth, and eleventh assignments of error are sustained. *Page 13 
 {¶ 14} Feurer's fifth assignment of error is based upon the trial court's granting of summary judgment for his claim of tortious wrongful discharge against public policy established by the Ohio Supreme Court inCoolidge v. Riverdale Local School Dist, 100 Ohio St.3d 141,2003-Ohio-5357, 797 N.E.2d 61. In Coolidge, the Ohio Supreme Court held that a dismissal of an employee for excessive absences while on leave pursuant to a workers' compensation claim violates public policy and is actionable. This court has held that the Coolidge decision created an independent public policy exception to the employment at will doctrine.Klopfenstein, supra at ¶ 23.
 {¶ 15} Here, Feurer was terminated while on leave for a workplace injury and while receiving temporary total disability benefits. Although Heartland presented alternative reasons for the discharge, Feurer presented some evidence that those reasons were pretexts. Viewing the evidence in a light most favorable to Feurer, there are genuine issues of material fact as to the reason for the termination. The trial court erred in granting summary judgment and the fifth assignment of error is sustained.
 {¶ 16} Finally, Feurer claims in the sixth, seventh, ninth, and tenth assignments of error that the trial court erred in granting summary judgment on the basis of Heartland's perception that Feurer was disabled. Feurer claims that Heartland terminated him because they erroneously believed he was unable to *Page 14 
perform his job. "An employee may be `regarded as' disabled `if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's requirements.'"Senter v. Hillside Acres Nursing Center of Willard, Inc. (N.D. Ohio 2004), 335 F.Supp.2d 836, 844 (citing Ross v. Campbell Soup Co. (6th Cir. 2001), 237 F.3d 701, 706). Heartland's witnesses testified in deposition that Feurer could not perform his job tasks because of the medication he was taking and because of the lifting restriction his doctor had ordered. However, Feurer's doctor testified that he was capable of lifting that weight and that the medications had no effect on Feurer's ability to perform his job. Additionally, Feurer had been performing his job tasks successfully for more than a year and received favorable performance reviews. This contradictory evidence is sufficient to raise questions of fact as to whether Feurer was actually disabled and justifiably terminated for inability to perform the job or if he was wrongfully perceived as disabled and terminated contrary to the law. Thus, the trial court erred in granting summary judgment and the sixth, seventh, ninth, and tenth assignments of error are sustained. *Page 15 
 {¶ 17} The judgment of the Court of Common Pleas of Marion County is reversed and the matter is remanded for further proceedings.
Judgment reversed and cause remanded.
 ROGERS, P.J., and SHAW, J., concur. *Page 1