URBAN, Appellant,

v.

OSBORN MANUFACTURING, INC. et al., Appellees.

[Cite as *Urban v. Osborn Mfg., Inc.*, 165 Ohio App.3d 673, 2006-Ohio-1080.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86287.

Decided March 9, 2006.

F. Benjamin Riek III Co. and F. Benjamin Riek III, for appellant.

Millisor & Nobil Co., L.P.A., Richard A. Millisor, and Scott A. Lefelar, for appellees.

COLLEEN CONWAY COONEY, Judge.

{¶ 1} Plaintiff-appellant, Betty Urban, appeals the trial court's decision granting summary judgment in favor of defendants-appellees, Osborn Manufacturing, Inc. and others ("Osborn"). Finding no merit to the appeal, we affirm.

{¶ 2} Urban was employed by Osborn for six years. She was a member of Local 538 of the United Automobile Workers and was subject to the collective bargaining agreement ("CBA") negotiated between the union and Osborn. Pursuant to the CBA, Urban could not be terminated without just cause. The CBA also provided a comprehensive dispute-resolution process by which an employee, through her union, could contest the company's decision to discipline or terminate her.

{¶ 3} Urban's first position with the company as an operator was eliminated, and the company transferred her to another department. She discovered that her new work area was infested with pigeon droppings, and she requested that the droppings be removed. She then asked other management officials to address the problem. Urban next informed her supervisor that if the droppings were not removed, she would contact the Occupational Safety and Health Administration ("OSHA"). Urban never filed a formal complaint with OSHA.

{¶ 4} In June 2003, Urban complained about the situation to the company president. About the same time, Urban began receiving warnings for alleged failures in her preparation of products for Osborn's customers. Osborn terminated her employment on July 16, 2003, for "continued poor job performance." The union filed a grievance on her behalf, arguing that her termination for poor work performance was wrongful and without just cause. The union subsequently withdrew the grievance.

{¶ 5} In July 2004, Urban filed suit against Osborn for wrongful discharge. Osborn filed a motion for summary judgment, arguing that Urban was a union employee subject to a CBA, so she was prohibited from asserting a public-policy claim against her employer. The trial court granted Osborn's motion. Urban appeals, raising two assignments of error.

{¶ 6} This court reviews the lower court's granting of summary judgment de novo. *Druso v. Bank One of Columbus* (1997), 124 Ohio App.3d 125, 131, 705 N.E.2d 717; *Brown v. Scioto Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 7} The Ohio Supreme Court has established that summary judgment under Civ.R. 56 is proper when:

(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears

from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.

*State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 8} The party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Any doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138. There is no issue for trial, however, unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 9} In her first assignment of error, Osborn argues that the trial court erred in dismissing her claim for wrongful discharge in violation of public policy. In *Greeley v. Miami Valley Maintenance Contr., Inc.* (1989), 49 Ohio St.3d 228, 551 N.E.2d 981, the Ohio Supreme Court first recognized that public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason that violates the clear public policy of Ohio.[1] To state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging her contravened a clear public policy. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 383, 639 N.E.2d 51.

{¶ 10} Generally, only an at-will employee may maintain a cause of action for wrongful discharge in violation of public policy. *Haynes v. Zoological Soc. of Cincinnati* (1995), 73 Ohio St.3d 254, 652 N.E.2d 948. In *Haynes*, the court declined to extend wrongful discharge to union employees subject to a CBA. Id. The court held that the CBA specifically limited the power of the employer to terminate Haynes and, as a result, took her outside the context of employment at will; therefore, she was outside the class of employees for whom *Greeley* provided protection. Id.; see, also, *Surry v. Cuyahoga Community College*, 149

---

1. The employment-at-will doctrine traditionally allowed an employer to terminate the employment of his worker " 'at will for any cause, at any time whatsoever, even if done in gross or reckless disregard of [an] employee's rights.' " *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 102, 23 OBR 260, 491 N.E.2d 1114, quoting *Peterson v. Scott Constr. Co.* (1982), 5 Ohio App.3d 203, 205, 5 OBR 466, 451 N.E.2d 1236.

Ohio App.3d 528, 2002-Ohio-5356, 778 N.E.2d 91; *Kulak v. Mail–Well Envelope Co.* (Aug. 31, 2000), Cuyahoga App. No. 76974, 2000 WL 1231486; *Collins v. Yellow Freight Sys.* (C.A.6, 2004), 93 Fed.Appx. 854, 863, 2004 WL 690138.

{¶ 11} Urban urges this court to ignore *Haynes* and expand the holding of *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, to find that members of a union who are subject to a CBA can assert a claim for wrongful discharge in violation of public policy.

{¶ 12} In *Coolidge,* the Ohio Supreme Court held that an employee who is receiving temporary total disability compensation under the Workers' Compensation Act may not be discharged solely on the basis of absenteeism if the inability to work is directly related to the condition for which the employee is on disability. Urban proposes that the holding in *Coolidge* allows a union employee to bring a cause of action for wrongful discharge pursuant to *Greeley.*. We disagree. In *Coolidge,* the court neither explicitly nor implicitly overruled its holding in *Haynes.*[2] *Coolidge* does not address a union employee of a private employer, nor does it allow any other expansion of wrongful-termination claims outside the at-will context. "Thus, the *Coolidge* court did not create a new cause of action but, rather, expanded the type of action that constitutes retaliation under R.C. 4123.90 to include termination for absenteeism while on [temporary total disability]." *Brooks v. QualChoice, Inc.*, Cuyahoga App. No. 85692, 2005-Ohio-5136.

{¶ 13} Urban contends that *Coolidge* effectively overruled the previous holding in *Haynes,* citing an unreported case to support her argument. In *Haren v. Superior Dairy, Inc.*, Stark App. No. 2003–CA–00331, 2004-Ohio-4436, 2004 WL 1879094, the court stated that the *Coolidge* court had concluded that protection from wrongful discharge in violation of public policy or statute should apply to employees covered by a CBA as well as to at-will employees. We disagree with *Haren*'s interpretation of *Coolidge.* *Coolidge* did not give a blanket extension to all employees covered by a CBA, but found that the workers' compensation system redefined the employment relationship. *Coolidge,* supra, at ¶ 45. Further, the court did not explicitly overrule its previous holding in *Haynes.* Cases decided after *Coolidge* continue to apply the *Haynes* directive and refuse to allow employees covered by a CBA to bring public-policy claims for wrongful discharge. See *Ferguson v. Lear Corp.*, 155 Ohio App.3d 677, 2003-Ohio-7261, 802 N.E.2d 1141; *Scarabino v. E. Liverpool City Hosp.*, 155 Ohio App.3d 576, 2003-Ohio-7108, 802 N.E.2d 188; *Klepsky v. United Parcel Serv.* (Sept. 27, 2005), U.S. Dist. Ohio, Case No. 1:04 CV 1683, unreported.

{¶ 14} As stated in *Klepsky,* supra, courts have interpreted *Haynes* consistently. Like *Klepsky,* the instant case does not involve the interpretation of a statute

---

**2.** *Haynes* is not even mentioned in *Coolidge.*

prohibiting Urban from being terminated without good cause, as did the *Coolidge* case. *Klepsky* was not persuaded by the reasoning in *Haren*, and neither are we. Urban was subject to a CBA and utilized the protections of that agreement by filing a grievance.[3]

{¶ 15} *Coolidge* may be further distinguished because, in that case, the plaintiff/workers' compensation claimant was fired because she was absent as a result of her disability. In *Coolidge*, the court found that her "absence and inability to work were due entirely to a work-related injury for which she was receiving ongoing [disability] compensation, her discharge constitutes a violation of public policy and, therefore, is without 'good and just cause' under R.C. 3319.16." *Coolidge*, supra, at ¶ 52.

{¶ 16} In the case at bar, Urban was terminated for failure to perform her work, as demonstrated by the numerous warnings she received. Moreover, the CBA provided her a comprehensive grievance procedure. Although this court cannot speculate why Urban's union withdrew her grievance, Urban cannot now claim wrongful discharge merely because she was dissatisfied with the outcome of the grievance process. Her situation is governed by the terms of the CBA. Furthermore, even if she were an at-will employee, we are not convinced that she has alleged facts demonstrating that her employer's act of discharging her contravened a "clear public policy." See *Greeley*, supra. There is simply no evidence that Urban was terminated for any reason other than poor performance. Urban never filed a complaint with OSHA or any other entity.

{¶ 17} We also note that even if a public-policy claim could be made, Osborn would be entitled to summary judgment. In order to support a claim for discharge in violation of public policy, a plaintiff must show (1) the existence of a clear public policy, (2) dismissal under circumstances that would jeopardize that policy, (3) dismissal related to the public policy, and (4) lack of an overriding business justification for the employer's action. See *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51. There is no evidence that Urban's discharge was related to her safety complaints, nor has Urban shown that the actual reason Osborn terminated her was retaliatory in nature. Urban has produced no evidence to show that her discharge was related to or jeopardized public policy or that Osborn lacked an overriding justification for her termination. Therefore, a public-policy claim cannot stand.

{¶ 18} Urban argues that unless the tort of wrongful discharge is recognized for collective bargaining employees, employers will be able to terminate their employees with impunity for making complaints regarding health hazards.

---

3. The record does not reveal why the union withdrew the complaint.

Again, we disagree. Employees may utilize the grievance procedure under the CBA, the anti-retaliatory provision of the Occupational Safety and Health Act, Section 660(c), Title 29, U.S.Code, or any other applicable federal statute. Wrongful discharge in violation of public policy serves to afford at-will employees protection from employers who unilaterally terminate employees for abusive reasons. Employees subject to a CBA do not require judicially-created protection because their employment rights are already subject to protection. We find nothing in *Coolidge* or its progeny that allows this court to reinterpret the holding in *Haynes*. Therefore, the first assignment of error is overruled.

{¶ 19} In her second assignment of error, Urban argues that the trial court erred in basing its dismissal on the "mistaken belief" that her remedy was limited to Ohio's Whistleblower Statute, R.C. 4113.52.

{¶ 20} Urban proposes that the Ohio Supreme Court's holding in *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308, states that R.C. 4113.52 does not preempt a common-law cause of action against an employer who discharges an employee in violation of that statute.[4] We agree that the syllabus in *Kulch* states that; however, Urban's argument is a limited view of the court's holding. *Kulch* held:

[A]n at-will employee who is discharged or disciplined for filing a complaint with OSHA concerning matters of health and safety in the workplace is entitled to maintain a common-law tort action against the employer for wrongful discharge/discipline in violation of public policy pursuant to *Greeley*, [citation omitted], and its progeny. Thus, appellant is entitled to maintain a *Greeley* claim against appellees whether or not he complied with the dictates of R.C. 4113.52 in reporting his employer to OSHA. * * * We further hold that an at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a common-law cause of action against the employer pursuant to *Greeley* and its progeny so long as that employee had fully complied with the statute and was subsequently discharged or disciplined. The remedies available pursuant to R.C. 4113.52 for violations of the statute and the remedies available for the tort of wrongful discharge are cumulative. Therefore, an at-will employee who is discharged or disciplined in violation of R.C. 4113.52 may maintain a statutory cause of action for the violation, a common-law cause of action in tort, or both, but is not entitled to double recovery.

Id. at 162, 677 N.E.2d 308.

{¶ 21} The importance of this opinion as it relates to the instant case is that *Kulch* specifically stated "pursuant to *Greeley*." As discussed in the first

---

4. R.C. 4113.52 governs the right of an employee to report her employer or fellow employee for violations of law.

assignment of error, Urban is precluded from bringing a claim pursuant to *Greeley* because she was not an at-will employee.[5] Therefore, the second assignment of error is overruled.

Judgment affirmed.

SWEENEY, P.J., and CORRIGAN, J., concur.

---

5.  Urban concedes that the Whistleblower Statute does not apply to the instant case.