**KLOPFENSTEIN, Appellant,**

v.

**NK PARTS INDUSTRIES, INC., Appellee.**

[Cite as *Klopfenstein v. NK Parts Industries, Inc.*,
171 Ohio App.3d 286, 2007-Ohio-1916.]

Court of Appeals of Ohio,
Third District, Shelby County.

No. 17–05–05.

Decided April 23, 2007.

Gary D. Plunkett and Brett Bissonnette, for appellant.

Frank Wobst, for appellee.

RogeRs, Presiding Judge.

{¶ 1} Plaintiff-appellant, David Klopfenstein, appeals the judgment of the Shelby County Court of Common Pleas, dismissing his common-law wrongful-discharge claim. On appeal, Klopfenstein argues that the trial court erred in applying the notice provisions and statute of limitations contained in R.C. 4123.90. Finding that the Ohio Supreme Court's decision in *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, creates an independent public-policy exception to the employment-at-will doctrine and that the trial court erred in applying the notice provisions and statute of limitations contained in R.C. 4123.90, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

{¶ 2} Defendant-appellee, NK Parts Industries, Inc., hired Klopfenstein as a laborer in its warehouse and logistics center. On June 18, 2002, Klopfenstein sustained a work-related injury and subsequently applied for and received temporary-total-disability ("TTD") benefits under the Ohio Workers' Compensation Act. As a result of his injury, Klopfenstein was on a continuous leave of absence from NKP between October 28, 2002, and April 28, 2003. In accordance

with its leave-of-absence policy then in effect, NKP mailed Klopfenstein correspondence that terminated his employment effective April 28, 2003, due to his excessive absenteeism.

{¶ 3} On October 13, 2004, Klopfenstein filed a complaint in the Shelby County Court of Common Pleas against NKP, alleging claims for wrongful discharge, intentional infliction of emotional distress, and punitive damages. Klopfenstein based his wrongful-discharge claim on a violation of public policy because NKP terminated him while he was on a workers' compensation leave of absence stemming from his work-related injury.

{¶ 4} On November 12, 2004, NKP moved under Civ.R. 12(B)(1) to dismiss Klopfenstein's wrongful-discharge and punitive-damage claims for lack of subject-matter jurisdiction. In doing so, NKP argued that Klopfenstein could not sustain a wrongful-discharge claim based on a violation of public policy because the workers' compensation antiretaliation statute, R.C. 4123.90, provided the exclusive statutory remedy for an employee alleging a retaliatory discharge in connection with the filing of a workers' compensation claim.

{¶ 5} The trial court agreed with NKP and found that R.C. 4123.90 provided the exclusive statutory remedy in this case. The trial court also found that Klopfenstein failed to comply with the notice and time provisions of R.C. 4123.90; Klopfenstein had not notified NKP within 90 days of his termination of his belief that his termination violated his rights or any federal or state laws or public policies and did not bring the wrongful-discharge claim at issue within the 180–day statute of limitations. The trial court therefore dismissed Klopfenstein's wrongful-discharge and punitive-damage claims. Thereafter, Klopfenstein voluntarily dismissed his claim for intentional infliction of emotional distress.

{¶ 6} It is from this judgment that Klopfenstein appeals, presenting the following assignment of error for our review:

The trial court erred in applying the notice provisions and statute of limitations found within Ohio R.C. Section 4123.90 to the circumstance where an employee is terminated due to a company's neutral absenteeism policy, where the employee is absent from work due to a workplace injury, and where the employee does not invoke Section 4123.90 nor allege that his termination was retaliatory in nature.

{¶ 7} In his sole assignment of error, Klopfenstein asserts that the trial court erred in applying the notice and statute-of-limitations requirements contained in R.C. 4123.90 to his common-law wrongful-discharge claim, which was based on violation of public policy, and dismissing it for lack of subject-matter jurisdiction. Specifically, Klopfenstein contends that the four-year statute of limitations set forth in R.C. 2305.09 applies to his claim of wrongful discharge in violation of

public policy and that the trial court's application of the shorter limitations period is contrary to the Ohio Supreme Court's holding in *Pytlinski v. Brocar Prod., Inc.* (2002), 94 Ohio St.3d 77, 760 N.E.2d 385. We agree.

{¶ 8} We review the trial court's decision to grant NKP's motion to dismiss for lack of subject-matter jurisdiction de novo. See *State ex rel. Bush v. Spurlock* (1989), 42 Ohio St.3d 77, 80, 537 N.E.2d 641. Thus, we must determine whether Klopfenstein alleged a cause of action in his complaint that the trial court had authority to decide. Id.

{¶ 9} R.C. 4123.90, the antiretaliation statute of the Ohio Workers' Compensation Act, provides:

No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

{¶ 10} Historically, Ohio courts have interpreted R.C. 4123.90 to protect employees from being discharged by their employers for participating in the workers' compensation system and have refused to extend the protection beyond those specific boundaries. See, e.g., *Blair v. Milford Exempted Village School Dist. Bd. of Edn.* (1989), 62 Ohio App.3d 424, 575 N.E.2d 1190; *Barker v. Dayton Walther Corp.* (1989), 56 Ohio App.3d 1, 564 N.E.2d 738; *Vince v. Parma Comm. Gen. Hosp.* (Jan. 21, 1988), 8th Dist. No. 53180, 1988 WL 5165; *Brown v. Whirlpool Corp.* (Sept. 1, 1987), 3d Dist. No. 9–86–20, 1987 WL 16261. Therefore, if an at-will employee did not allege a retaliatory motive for his or her discharge, then the employee was not able to recover under R.C. 4123.90.

{¶ 11} However, in this case, we must determine whether the Ohio Supreme Court's decision in *Coolidge* creates a common-law claim for wrongful discharge in violation of public policy, entirely separate and distinct from R.C. 4123.90. A review of Ohio Supreme Court precedent dealing with exceptions to the employment-at-will doctrine is important to our analysis.

{¶ 12} In *Greeley v. Miami Valley Maint. Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, the Ohio Supreme Court acknowledged an exception to the employment-at-will doctrine and created a cause of action in tort for wrongful discharge in violation of public policy. Specifically, the court held that "the right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy." Id., paragraph two of the syllabus. Additionally, in *Greeley*, the Ohio Supreme Court recognized that the public-policy exception to the employment-at-will doctrine need not be premised solely upon a

violation of a specific statute, explaining, "Today, we only decide the question of a public policy exception to the employment-at-will doctrine based on violation of a specific statute. This is not to say that there may not be other public policy exceptions to the doctrine but, of course, such exceptions would be required to be of equally serious import as the violation of a statute." Id. at 234–235, 551 N.E.2d 981; see, also, *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 149–150, 677 N.E.2d 308.

{¶ 13} Two years later, in *Tulloh v. Goodyear Atomic Corp.* (1992), 62 Ohio St.3d 541, 584 N.E.2d 729, syllabus, the Ohio Supreme Court held that "[a]bsent statutory authority, there is no common-law basis in tort for a wrongful discharge claim," a holding that appears to be in conflict with the court's decision in *Greeley.*[1]

{¶ 14} Nevertheless, the Ohio Supreme Court overruled *Tulloh,* in *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraphs two and three of the syllabus, and held:

2. To state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging him contravened a "clear public policy." (*Greeley v. Miami Valley Maintenance Contractors, Inc.* [1990], 49 Ohio St.3d 228, 551 N.E.2d 981, affirmed and followed.)

3. "Clear public policy" sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law. (*Tulloh v. Goodyear Atomic Corp.* [1992], 62 Ohio St.3d 541, 584 N.E.2d 729, overruled.)

{¶ 15} In *Kulch,* the Ohio Supreme Court again acknowledged the exception to the employment-at-will doctrine:

*Greeley* and *Painter* recognize an exception to the employment-at-will doctrine when an at-will employee is discharged or disciplined for a reason that contravenes clear public policy. There is no question that *Greeley* and *Painter* recognize that clear public policy may be ascertained from a statutory provision or from any number of other sources. If there was ever any serious question whether a specific statute had to be violated for *Greeley* to apply, *Painter* answered that question in the negative by expressly overruling *Tulloh,* supra. See *Painter,* paragraph three of the syllabus. The question whether the

---

1. The syllabus in *Tulloh* was supported by a majority composed of two justices and two visiting judges.

*Greeley* public-policy exception to the employment-at-will doctrine applies only in cases involving a statutory violation was soundly rejected not only in *Painter*, but in the recent case of *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 652 N.E.2d 653.

78 Ohio St.3d at 150, 677 N.E.2d 308.

{¶ 16} Additionally, the Ohio Supreme Court held that in determining whether an appellant has a viable common-law cause of action under *Greeley* for a tortious wrongful discharge in violation of public policy, the following elements are required:

"'1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

"'2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

"'3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

"'4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).' (Emphasis sic.)"

*Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653, quoting *Painter*, 70 Ohio St.3d at 384, 639 N.E.2d 51, fn. 8, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398–399. In making this determination, the Ohio Supreme Court also noted that the clarity and jeopardy elements of a wrongful-discharge claim are questions of law, whereas the causation and overriding-justification elements are questions of fact. *Collins*, 73 Ohio St.3d at 70, 652 N.E.2d 653.

{¶ 17} Three years after the *Kulch* decision, the Ohio Supreme Court decided *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526. In a four-to-three decision, with Justice Pfiefer concurring in judgment only, the court determined that an at-will employee could not premise a claim for wrongful discharge in violation of public policy upon his employer's violation of the Family Medical Leave Act, because the remedies provided within the act were sufficiently comprehensive to render unnecessary the recognition of a separate common-law claim based solely on the Act. Id. at ¶ 22.

{¶ 18} After *Wiles*, the Supreme Court decided *Coolidge*, stating in the syllabus:

An employee who is receiving temporary total disability compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or

inability to work, when the absence or inability to work is directly related to an allowed condition.

*Coolidge,* 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, syllabus.

{¶ 19} *Coolidge* involved a public school teacher who had been assaulted by a student and was receiving TTD benefits under the Workers' Compensation Act when she was discharged from employment. The teacher, admitting that she was not an at-will employee and had no claim under R.C. 4123.90, argued instead that her discharge was against public policy as set forth in R.C. 4123.90, which prohibits employers from taking retaliatory action against employees who file workers' compensation claims, and R.C. 4123.56, which provides TTD compensation to employees who are too injured to return to work. Id. at ¶ 21–24.

{¶ 20} The Ohio Supreme Court recognized that it had "never decided whether discharges for absenteeism caused by allowed workers' compensation injuries [were] violative of public policy in the absence of retaliatory motive" and reviewed case law from Ohio appellate courts that had strictly interpreted Ohio's antiretaliation statute, R.C. 4123.90, as well as public-policy decisions from other state courts. *Coolidge,* 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, at ¶ 25 and 27–41. The court determined that the position of the minority of courts, which hold that "it is a violation of public policy for an employer to discharge or otherwise penalize a temporarily and totally disabled employee pursuant to a 'neutral' absenteeism or attendance policy, when the absence or inability to work is directly related to a compensable injury," was "more tenable and consistent with the purposes of the Workers' Compensation Act." Id. at ¶ 28, 42. Accordingly, the court held that "Coolidge's absence and inability to work were due entirely to a work-related injury for which she was receiving ongoing TTD compensation, [and] her discharge constitute[d] a violation of public policy and, therefore, [was] without 'good cause and just cause' under R.C. 3319.16." Id. at ¶ 52.

{¶ 21} A number of federal district courts have interpreted *Coolidge* as creating an additional public-policy exception to the employment-at-will doctrine. See *Hall v. ITT Automotive* (N.D.Ohio 2005), 362 F.Supp.2d 952, 962; *Simmons v. Wal–Mart Assoc., Inc.* (July 19, 2005), S.D.Ohio No. 2:04–CV–51, 2005 WL 1684002; *Welty v. Honda of Am. Mfg., Inc.* (S.D.Ohio 2005), 411 F.Supp.2d 824; *Salyer v. Honda of Am. Mfg., Inc.* (Sept. 23, 2005), S.D.Ohio No. 2:04–CV–988, 2005 WL 2338786. To the contrary, the Sixth Circuit Court of Appeals has held that an employee's proper recourse for an alleged retaliatory discharge for filing a workers' compensation claim was to bring a cause of action under the statute, not a public-policy claim. *Kusens v. Pascal Co.* (C.A.6, 2006), 448 F.3d 349, 365; *Jakischa v. Cent. Parcel Express* (C.A.6, 2004), 106 Fed.Appx. 436.

{¶ 22} In Ohio appellate courts, there is a split in the interpretation of *Coolidge*. The Eighth District has rejected the notion that *Coolidge* creates a public-policy exception to the employment-at-will doctrine, holding instead that *Coolidge* merely "expanded the type of action that constitutes retaliation under R.C. 4123.90 to include termination for absenteeism while on TTD," *Brooks v. Qualchoice, Inc.*, 8th Dist. No. 85692, 2005-Ohio-5136, 2005 WL 2386479, at ¶ 11; see, also, *Urban v. Osborn Mfg., Inc.*, 165 Ohio App.3d 673, 2006-Ohio-1080, 847 N.E.2d 1272, at ¶ 12. However, the First District specifically rejected the Eighth District's interpretation and held that *Coolidge* created a public-policy exception to the employment-at-will doctrine. *Bickers v. W.S. Life Ins. Co., Inc.*, 1st Dist. No. C–040342, 2006-Ohio-572, 2006 WL 305442.[2]

{¶ 23} We conclude that *Coolidge* creates an independent public-policy exception to the employment-at-will doctrine. While we recognize that *Coolidge* dealt with an employee under a collective-bargaining act and thus did not address the four elements necessary for a public-policy claim under *Greeley*, we believe that the court's analysis applies equally to at-will employees. Focusing on the language in *Coolidge*, we are persuaded by the court's recognition of the public policy embedded in the Workers' Compensation Act, not solely in R.C. 4123.90, to prohibit discharge for absenteeism and its conclusion that this public policy would be jeopardized if certain aggrieved employees were foreclosed from having an enforcement vehicle to protect those rights. Additionally, we believe it would be error to expand the unambiguous language of R.C. 4123.90 to include all potential common-law public-policy violations of the act, because it would contradict the legislature's requirement of retaliatory intent encompassed in R.C. 4123.90.

{¶ 24} Because *Coolidge* creates an independent public-policy exception to the employment-at-will doctrine, Klopfenstein has an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted. Therefore, compliance with the notice and statute-of-limitations requirements in R.C. 4123.90 is not required, because his cause of action is not based upon that statute but is instead based on common law for violation of public policy. See, e.g., *Pytlinski*, 94 Ohio St.3d at 80, 760 N.E.2d 385. R.C. 2305.09(D) provides the general limitations period for tort actions not specifically covered by other statutory sections. Because Klopfenstein's action is not specifically covered by any statutory section, we hold that the limitations period for his common-law claim for wrongful discharge in violation of public policy is four years, as set forth in R.C. 2305.09(D). Klopfenstein filed his complaint against NKP within four

---

**2.** *Bickers* has been accepted as a discretionary appeal to the Ohio Supreme Court. *Bickers v. W.S. Life Ins. Co., Inc.*, 110 Ohio St.3d 1409, 2006-Ohio-3306, 850 N.E.2d 71.

years from the date he was terminated. Therefore, the trial court erred in dismissing Klopfenstein's complaint.

{¶ 25} Accordingly, Klopfenstein's assignment of error is sustained.

{¶ 26} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

SHAW and PRESTON, JJ., concur.